UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RICKY ANTONIO DAVIS,

                    Plaintiff,                              Case No. 1:25-cv-651

v.                                                         Honorable Robert J. Jonker

UNKNOWN BURGESS et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate

order, the Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison

Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required

to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious,

fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant

immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must

read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and

accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton

v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

complaint for failure to state a claim.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The

events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF staff in their official capacities: Warden Unknown Burgess, Correctional Counselor Unknown Bennett, and Lieutenants Unknown Baker and Mackey. (Compl., ECF No. 1, PageID.2–3.)

Plaintiff's complaint concerns events that took place in July and August 2023. (*Id.*, PageID.6.) Though Plaintiff's complaint does not contain any factual allegations concerning his claims against Defendants, Plaintiff has attached to his complaint grievances and documents related to his grievances. In construing Plaintiff's *pro se* complaint liberally, the Court has relied upon these documents to discern the nature of Plaintiff's claims.[1]

First, Plaintiff alleges that, on July 17, 2023, Plaintiff's eyeglasses were "accident[al]ly damaged by Defendant Baker and non-parties while they were packing Plaintiff's property and searching Plaintiff's property for contraband. (*Id.*, PageID.24–25.) Plaintiff completed grievances related to this incident; however, Defendant Burges denied Plaintiff's step II grievance appeal. (*Id.*, PageID.26.)

Second, Plaintiff alleges that, on July 18, 2023, Plaintiff's personal property and food were taken from him without a hearing. (*Id.*, PageID.63.)

Third, Plaintiff alleges that he began a hunger strike on July 18, 2023. (*Id.*, PageID.38.) Plaintiff was evaluated by non-party healthcare providers on July 20, 2023, and July 21, 2023;

---

[1] The Court may consider documents that are attached to a pro se complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g., Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to [plaintiff]'s complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint.

however, Plaintiff was not evaluated by non-party Registered Nurse Briske on July 23, 2023. (*Id.*) Plaintiff alleges that he asked for "Nurse Briske who played deaf." (*Id.*, PageID.41.) At 11:34 a.m., Plaintiff asked non-party Officer Taylor to "ask RN Briske" as Briske was passing out medication. (*Id.*, PageID.31.) Plaintiff was not seen by Nurse Briske. (*Id.*) At or around 11:50 a.m., Plaintiff lost consciousness. (*Id.*, PageID.38–39.) Plaintiff asserts that, in refusing to see him, Nurse Briske violated MDOC policy. (*Id.*, PageID.41.)

Fourth, Plaintiff alleges that non-party Officer Gutowski shut off the water in Plaintiff's cell for four days while Plaintiff was on his hunger strike. (*Id.*, PageID.47.) Officer Gutowski told Plaintiff that, if he wanted water, he could get it from the chow hall or drink from the toilet. (*Id.*) Plaintiff claims that he subsequently suffered kidney failure. (*Id.*)

Fifth, Plaintiff disputes the adequacy of mental health care provided to him by non-party Matthew Ensing on an unidentified date. (*Id.*, PageID.30.) It appears from the summary of Plaintiff's grievance provided by Ensing that Plaintiff was offered mental health services but was upset that he was not assigned a "POA" and was not able to see another healthcare provider. (*Id.*)

Sixth, on July 26, 2023, Defendants Mackey and Baker came to Plaintiff's cell and told Plaintiff, "I receive your grievance. Anything you want to add, this is your hearing/interviewed!" (*Id.*, PageID.48.) Plaintiff began speaking but was cut off by Defendant Baker, who denied throwing Plaintiff's food away and told Plaintiff, "You want problems, you got them now. Don't leave this cell." (*Id.*)

Lastly, Plaintiff alleges that on August 24, 2023, Plaintiff told Defendant Bennett that he was hunger striking but that Defendant Bennett and non-party Assistant Deputy Warden Erway failed to report the hunger strike in violation of MDOC policy. (*Id.*, PageID.57.) Assistant Deputy Warden Erway came to Plaintiff's cell that same day to "talk with [Plaintiff] to convince [Plaintiff]

to end the hunger strike . . ." (*Id.*, PageID.58.) Plaintiff transferred from ECF on August 29, 2023. (*Id.*, PageID.57.)

Plaintiff brings claims for violation of his First, Eighth, Ninth, and Fourteenth Amendment rights. (*Id.*, PageID.4.) Plaintiff also claims that Defendants violated his rights to adequate medical care, due process, and equal protection. (*Id.*, PageID.4, 7.) As relief for the alleged violations of Plaintiff's constitutional rights, he seeks monetary relief. (*Id.*, PageID.8, 20–21.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

4

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff states that he intends to sue Defendants in their official capacities only. (Compl., ECF No. 1, PageID.2–3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617.

Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities upon which relief can be granted.

      **B.     Individual Capacity Claims**

Although Plaintiff states that he sues Defendants in their official capacities, Plaintiff primarily seeks monetary relief. As discussed above, monetary relief is only available against Defendants in their individual capacities. Accordingly, the Court will generously construe Plaintiff's complaint as bringing claims against Defendants in their respective individual capacities as well.

      **1.     Claims Against Defendant Burgess**

Plaintiff names Defendant Burgess in his list of parties; however, he fails to allege facts that would plausibly suggest that Defendant Burgess personally took any action against him.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Here, Plaintiff's claims against Defendant Burgess fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and

are subject to dismissal for that reason alone. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Plaintiff appears to name Defendant Burgess solely because of his supervisory position as Warden of ECF. The documents attached to Plaintiff's complaint indicate that Defendant Burgess denied Plaintiff's grievance appeals. Plaintiff also claims that Defendants "knew or reasonably should have known" of alleged constitutional violations of others "even if others actually performed the violation." (Compl., ECF No. 1, PageID.17.) However, this language sounds in vicarious liability, which is not applicable for alleged constitutional violations under 42 U.S.C. § 1983.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Burgess encouraged or condoned the conduct of his subordinates, or authorized, approved or knowingly acquiesced in the conduct. Because Plaintiff's § 1983 claims against Defendant Burgess are premised on nothing more than respondeat superior liability, they are properly dismissed for failure to state a claim on which relief may be granted.

## 2.    First Amendment Claims

Plaintiff alleges that he was "retaliated against by 'state actors' for writing grievances" and complaining of the actions of ECF staff. (Compl., ECF No. 1, PageID.7.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See*

*Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to submit "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Although Plaintiff does not identify the grievances and complaints that he believes prompted the allegedly retaliatory actions, Plaintiff attaches several grievances to his complaint. The Court will consider those grievances for purposes of Plaintiff's First Amendment retaliation claim and will assume that Plaintiff satisfies the first element of a claim for First Amendment retaliation for purposes of screening.

### a.    Defendant Baker

Plaintiff claims that Defendant Baker "accidentally" damaged Plaintiff's eyeglasses while packing and searching Plaintiff's personal property. (Compl., ECF No. 1, PageID.24–25.) However, an accidental action cannot, by its nature, be said to have been done with retaliatory intent for purposes of a First Amendment claim. Moreover, Plaintiff fails to point to any grievances or other protected conduct before July 17, 2023, that could be said to have motivated Defendant Baker's actions. (*See id.*, PageID.24–65, generally.)

Plaintiff also claims that Defendant Baker told Plaintiff, "You want problems, you got them now. Don't leave this cell." (*Id.*, PageID.48.) Plaintiff describes this statement as a threat. However, the "threat" by Defendant Baker does not rise to the level of an adverse action for purposes of a retaliation claim. Plaintiff does not allege that Defendant Baker threatened any specific consequences should Plaintiff leave his cell, nor does Plaintiff allege that the threat was accompanied by any actual conduct. Therefore, the Court concludes that such a vague statement would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The

alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat [–to 'get' a prisoner who files a grievance on Krause and 'steps out of line'—] is  too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . Such a vague threat of unspecified harm falls short of adverse action.").

Accordingly, for each of the foregoing reasons, Plaintiff fails to state a claim for First Amendment retaliation against Defendant Baker.

### b.    Defendant Mackey

Plaintiff claims that Defendant Mackey came to Plaintiff's cell with Defendant Baker on July 26, 2023, to interview Plaintiff regarding a grievance. (Compl., ECF No. 1, PageID.48.) During the interview, Defendant Baker made the statement to Plaintiff described above; however, Plaintiff does not allege that Defendant Mackey made any similar statements or otherwise took any adverse action against Plaintiff. Accordingly, Plaintiff has failed to plead sufficient facts to show an adverse action by Defendant Mackey and his First Amendment retaliation claim against Defendant Mackey will be dismissed.

#### c.    Defendant Bennett

Plaintiff alleges that he told Defendant Bennett that he was hunger striking but that Defendant Bennett failed to report the hunger strike in violation of MDOC policy. (Compl., ECF No. 1, PageID.57.) Plaintiff does not allege any facts that would suggest that Defendant Bennett's failure to report Plaintiff's hunger strike was intentional such that it could be said to have been done with the purpose, at least in part, of retaliating against Plaintiff.

Additionally, even if Defendant Bennett's failure to report had been intentional, Plaintiff fails to provide the Court with any facts that would allow the Court to infer the third element of causation. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 Fed.Appx. 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Nothing within Plaintiff's complaint plausibly suggests that Defendant Bennett was aware of Plaintiff's prior grievances or complaints, let alone that Defendant Bennett's failure to report Plaintiff's hunger strike related to those complaints or grievances. Plaintiff asks this Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to

permit the Court to draw a reasonable inference that Defendants acted with retaliatory intent. *See Iqbal*, 556 U.S. at 679. Plaintiff has not met his initial burden. Therefore, the Court will dismiss Plaintiff's retaliation claims against Defendant Bennett.

### 3.    Eighth Amendment Claims

Plaintiff brings Eighth Amendment claims, alleging that he was denied adequate medical and mental health care and was deprived of running water within his cell. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

The Eighth Amendment also prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Therefore, the Eighth Amendment prohibits conditions of confinement which result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).

However, as with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular named Defendants. *See Twombly*, 550 U.S. at 544. Plaintiff has not met that burden.

Plaintiff does not allege any facts that would plausibly suggest that any of the named Defendants were involved in Plaintiff's medical care, let alone that the named Defendants were

deliberately indifferent to Plaintiff's medical needs, serious or otherwise. Likewise, Plaintiff does not allege that any named Defendant was involved in the decision to turn the water off in Plaintiff's cell or was responsible for keeping the water off for four days. Thus, Plaintiff fails to state an Eighth Amendment claim upon which relief can be granted.

### 4.    Ninth Amendment Claims

Plaintiff claims that the actions of Defendants violated Plaintiff's Ninth Amendment rights. (Compl., ECF No. 1, PageID.4.) As the Sixth Circuit explained, the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law" and thus has no applicability in suit under § 1983. *See Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991); *see also Paul v. Davis*, 424 U.S. 693, 700 (1976) (dismissing § 1983 claim for failing to indicate specific constitutional guarantee safeguarding the allegedly infringed interest). Plaintiff's Ninth Amendment "claim fails simply because the Ninth Amendment does not guarantee any particular right, much less any right that is applied against the States by the Fourteenth Amendment." *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 681 (M.D. Tenn. 2020) (collecting cases). Accordingly, the Court will dismiss Plaintiff's Ninth Amendment claims.

### 5.    Fourteenth Amendment Equal Protection Claims

Plaintiff claims that Defendants violated Plaintiff's right to equal protection. (Compl., ECF No. 1, PageID.4.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element

13

of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff's complaint contains no facts or allegations to support his equal protection claim. He fails to identify any prisoner who was similarly situated to Plaintiff in all relevant respects but treated differently. Instead, any allegations of discriminatory treatment are wholly conclusory. As discussed above, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's Equal Protection claims will be dismissed.

### 6.    Fourteenth Amendment Due Process Claims

Plaintiff alleges that his glasses, other items of his personal property, and his food were taken and destroyed without due process. However, Plaintiff's due process claims regarding the deprivation of his property are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a

14

prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. And Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his property. Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim regarding the deprivation of his property.

### 7.    Claims Related to Plaintiff's Grievances

Plaintiff also appears to dispute the handling of his grievances. However, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the administrative grievance process, to the extent Defendants' actions or inactions interfered with he grievance process, that conduct did not deprive Plaintiff of due process.

To the extent alleged, Plaintiff's First Amendment right to petition the government was not violated by the rejection of Plaintiff's grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, any actions (or inactions) with respect to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

16

In light of the foregoing, the Court finds that Plaintiff cannot state any claim related to the handling of Plaintiff's grievances.

### 8. Claims for Violation of MDOC Policy

Plaintiff alleges that the actions of Defendants violated MDOC policy. To the extent that Plaintiff seeks to bring independent claims for these alleged violations, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated MDOC policy fails to state a claim under § 1983.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Plaintiff is advised, however, that should he appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610-11.

A judgment consistent with this opinion will be entered.


Dated:   August 1, 2025                              /s/ Robert J. Jonker
                                                     Robert J. Jonker
                                                     United States District Judge

18